# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **ANTHONY SHEELY, JR.** and | : | |
| **FELICIA A. BOYD-SHEELY,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:15-CV-01109-TCB-AJB** |
| **v.** | : | |
| | : | |
| **BANK OF AMERICA, N.A.** and | : | |
| **THE BANK OF NEW YORK** | : | |
| **MELLON** *formerly known as* | : | |
| **The Bank of New York, as Trustee** | : | |
| **For the Certificate-Holder of** | : | |
| **CWALT, Inc., Alternative Loan Trust** | : | |
| **2007-19 Mortgage Pass-Through** | : | |
| **Certificates, Series 2007-19,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

This matter is before the Court on the Motion to Dismiss presented jointly by

Defendants Bank of America, N.A. (hereinafter "BANA") and The Bank of New York

Mellon, as Trustee for the Certificate-Holders of CWALT, Inc., Alternative Loan Trust

2007-19 Mortgage Pass-Through Certificates, Series 2007-19 (hereinafter "BONYM")

(collectively "Defendants"), [Doc. 8]. For the reasons set forth below, the undersigned

**RECOMMENDS** that the motion be **GRANTED IN PART and DENIED IN PART**.

## I.     Background

### A.     Procedural History

Plaintiffs first filed an action against Defendants on January 16, 2014 in the Superior Court of Fulton County, asserting claims for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2614 ("RESPA"), fraud, wrongful foreclosure, and intentional infliction of emotional distress ("IIED").  *See Sheely v. Bank of America, N.A.*, No. 1:14-cv-00441-TCB, Doc. 1-1 at 4 (hereinafter *Sheely I*). Defendants removed that matter to this Court on February 17, 2014.  *Sheely I*, Doc. 1. As a result of Defendants' motion to dismiss the complaint, the District Court dismissed Plaintiff's RESPA claim with prejudice, the fraud claim against BANA without prejudice, the fraud claim against BONYM with prejudice, the wrongful foreclosure claim without prejudice, and the IIED claim without prejudice, and judgment was entered in favor of Defendants.  *Sheely I*, Docs. 15, 16; *see also Sheely v. Bank of America, N.A.*, 36 F. Supp. 3d 1364 (N.D. Ga. 2014) (Batten, J.).

On February 20, 2015, Plaintiffs filed another complaint in the Superior Court of Fulton County asserting claims for fraud (Count 1), breach of contract (Count 2), wrongful foreclosure (Count 3) and IIED (Count 4).  [Doc. 1-1 at 3].  Plaintiffs also

2

seek punitive damages (Count 5) and attorney's fees, and have moved for injunctive relief. [Doc. 1-2 at 8-9, 13]. On April 10, 2015, Defendants removed the action to this Court. [Doc. 1]. Defendants then filed a motion to dismiss on May 1, 2015. [Doc. 8]. On May 26, 2015, Plaintiff filed a response to Defendants' motion. [Doc. 11]. Defendants did not file a reply brief. (*See* Dkt.). With briefing completed, the Court discusses the pending motion.

### B.     Facts

In considering a motion to dismiss, the Court accepts the facts alleged in the complaint as true, and construes them in the light most favorable to the plaintiffs. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012); *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004). However, the Court does not accept as true bare legal assertions supported by mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009); *see also Graveling v. Castle Mortgage Co.*, No. 14-15198, 2015 WL 6847947, at *1 (11th Cir. Nov. 9, 2015). To survive a motion to dismiss, a complaint must offer more than naked assertions that the defendant acted unlawfully or a formulaic recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. A complaint must contain sufficient factual allegations that, accepted as true, state a plausible claim for relief. *Id.*

3

For purposes of the pending motions, the facts are as follows:

On May 7, 2007, Plaintiffs obtained a loan with Countrywide Home Loans, Inc. ("Countrywide") and executed a promissory note and security deed in favor of Countrywide. [Doc. 1-1 at ¶¶ 6-7].[1,2] MERS was listed as grantee under the security deed. [*Id*. at ¶ 7]. MERS assigned the security deed to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing LP ("BAC"), and BAC assigned the security deed to BONYM. [*Id*. at ¶ 8-9]. When the economy crashed in March 2010, Mr. Sheely's trucking business suffered and Plaintiffs were required to live off of their savings; however, the mortgage remained current. [*Id*. at ¶ 11]. Due to their financial circumstances, on March 10, 2010, Mr. Sheely contacted BANA to inquire about obtaining a loan modification to make the payments more affordable. [*Id*. at ¶ 12]. A BANA representative verbally told him that to be considered for a modification, he would have to be behind on the mortgage payments for at least 3 to 6 months and that the late payments would not impact his credit. [*Id*.]. Based on BANA's advice, Plaintiffs did not pay their mortgage for 3 months. [*Id*.].

---

[1]     Plaintiffs' Complaint is docketed at Docs. 1-1 and 1-2; the paragraphs are still in sequential order.

[2]     Only Plaintiff Anthony Sheely, Jr., was a signatory on the Note. [Doc. 1-2 at 19]. However, both Plaintiffs are signatories on the Security Deed. [*Id.* at 10].

4

On May 14, 2010, Mr. Sheely called BANA to check on eligibility for a modification. [*Id.* at ¶ 13]. A BANA representative informed him that he was eligible for a modification, and after BANA sent a loan modification package, Plaintiffs submitted all documents required for the loan modification on June 23, 2010. [*Id.* at ¶¶ 13-14]. On July 7, 2010, a BANA representative confirmed receipt of the documents and informed Plaintiffs that, due to the large number of modification packages, it would be 90 days before Plaintiffs would be notified about which modification program they qualified. [*Id.* at ¶ 14].

On November 18, 2010, BANA sent Mr. Sheely a letter informing him that he met the requirements for a modification, that BANA had several potential modification programs, and that BANA would notify them by mail as to which modification program he was being considered. [*Id.* at ¶ 15]. On December 14, 2010, Plaintiffs called BANA to check the status of the modification and were told that there would not be a decision for at least 90-120 days due to the massive number of applications, however, due to Department of Justice ("DOJ") litigation, all foreclosures would be suspended for 2011. [*Id.* at ¶ 16].

On May 12, 2011, Mr. Sheely called to check the status of the modification and was informed that the loan was under review for the Making Home Affordable

5

Modification program and/or an in-house modification.  [*Id.* at ¶ 17].  On May 27, 2011, a BANA representative told him that he would receive a package in the mail in the next 60-90 days.  [*Id.* at ¶ 18].  After not receiving the package, he called BANA on August 17, 2011 and was instructed by a BANA representative to re-fax the documents because BANA could not locate them.  [*Id.*].  Plaintiffs re-faxed the documents and BANA confirmed receipt on August 22, 2011, and advised Plaintiffs to call back in 60-90 days for an update.  [*Id.* at ¶ 19].  Mr. Sheely also was informed at that time that the loan was assigned to Customer Service Manager Eric Harris.  [*Id.*].  Plaintiffs called Harris on August 25, 2011, who stated that he could not discuss anything with them because they had an "advocacy code" (a code that indicated that a borrower was using a third party to assist with efforts to obtain a modification) on their account.  [*Id.* at ¶ 20].  Harris again refused to discuss the loan modification with them on September 7, 2011.  [*Id.* at ¶ 22].

On October 3, 2011, BANA again informed Plaintiffs that they needed to re-fax the documents, which they did on October 12, 2011.  [*Id.* at ¶¶ 26-27].  On November 10, 2011, BANA instructed Plaintiffs to again resend the documents because BANA did not show receipt of the documents in the file.  [*Id.* at ¶ 27].  The documents

AO 72A
(Rev.8/8
2)

were re-faxed and BANA confirmed receipt of the documents on November 18, 2011. [*Id.*].  They were again told that the process could take 60-90 days.  [*Id.*].

Under Paragraph 22 of the Security Deed, BANA and BONYM are required, at least 30 days before acceleration of the amounts due based upon a default, to provide notice of the default, the action required to cure the default, at least 30 days from the date of the notice to cure the default, and that failure to cure the default may result in acceleration.  [*Id.* at ¶ 52].  Plaintiffs did not receive this notice, but on January 6, 2012, Plaintiffs received a foreclosure notice for a sale date of February 7, 2012.  [*Id.* at ¶ 28]. Plaintiffs then obtained the help of Myhomesupport.org to assist them with the modification.  [*Id.*].  The foreclosure sale did not occur because the modification was under active review.  [*Id.*].

On April 26, 2012, BANA sent Mr. Sheely a letter informing him that he would be considered for a modification program under the DOJ settlement.  [*Id.* at ¶ 29].  He inquired about the program on April 30, 2012, and a BANA representative informed him that because they were being considered for the DOJ modification, they were no longer being considered for the Making Home Affordable Program as they could not be reviewed for two programs at the same time.  [*Id.*].  On June 18, 2012, BANA sent

7

Mr. Sheely a letter notifying him that he met the criteria to apply for the DOJ modification.  [*Id*. at ¶ 30].

On July 6, 2012, Eric Harris sent Mr. Sheely a letter informing him that BANA received his completed financial information for the modification program and stated that the evaluation process could take approximately 30 days.  [*Id*. at ¶ 31].  The letter also stated that Mr. Sheely would receive one of three responses: the loan was approved to begin the trial period, the loan was not eligible for this program but may be eligible for other foreclosure prevention alternatives, or BANA needs more information to make a decision.   [*Id*.].   However, BANA never sent a determination letter and on July 20, 2012, BANA told Mr. Sheely to restart the application process.  [*Id*. at ¶ 32]. On August 27, 2012, Plaintiffs re-faxed the documents to be considered for a loan modification.  [*Id*.].

On October 20, 2012, Harris sent Mr. Sheely a letter informing him that the loan was reviewed for the principal forgiveness (DOJ) modification program, but that he was not eligible because he did not make all Trial Period Plan payments on time. [*Id*. at ¶ 33].  However, Harris had never told Mr. Sheely that he was approved to begin trial payments.  [*Id*.].  Plaintiffs appealed BANA's decision and were informed that it would be 30-60 days before they would receive a decision.   [*Id*. at ¶ 34].   On

8

January 8, 2013, Mr. Sheely received a letter from BANA informing him that the appeal was denied.  [*Id*. at ¶ 35].  That same day, Plaintiffs called BANA and a representative told them to resubmit the documents and they were still being reviewed for the DOJ modification.  [*Id*.].  Plaintiffs resubmitted the documents on January 14, 2013.  [*Id*.].

On July 24, 2013, BANA sent Mr. Sheely a letter denying the application for the DOJ program because BANA could not create an affordable payment without changing the terms of the loan beyond the limits of the program.  [*Id*. at ¶ 36].

Plaintiffs also recounted in their complaint that former BANA employees have come forward and provided sworn statements detailing how BANA instructed its employees to tell borrowers that documents were incomplete or missing when in fact they were not, that the file was "under review" when it had not been accessed in months, BANA would consider documents stale after 30 days and forced homeowners to reapply for a modification, BANA would throw out documents on a consistent basis, falsify records in the computer system, and remove documents from homeowners' files to make it look like the borrower did not qualify for a permanent modification. [*Id*. at ¶¶ 41-42].  Plaintiffs claim that the sworn statements by the former employees mirror the actions BANA took in Plaintiffs' case.  [*Id*. at ¶ 44].

9

Plaintiffs suffered severe psychological, physical, and financial distress due to BANA's actions, including damaged credit, high blood pressure, and exhausting thousands of dollars for third party assistance, and remain in constant fear of losing their home.  [*Id*. at ¶¶ 45-50, 80].

## III.   Legal Standard

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that all allegations in the complaint are to be taken to be true even if doubtful in fact). However, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).  Additionally, as noted, the Court is not required to accept Plaintiff's legal conclusions.  *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012) (citing *Iqbal*,

AO 72A
(Rev.8/8
2)

556 U.S. at 678).  Nor will the Court "accept as true a legal conclusion couched as a factual allegation."  *See Twombly*, 550 U.S. at 555.

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under Rule 8 of the Federal Rules of Civil Procedure, a pleading states a claim when it contains, *inter alia*, "a short and plain statement of the claim showing that the pleader  is entitled to relief."  Fed R. Civ. P. 8(a)(2).  To determine whether a complaint fails to state a claim, the Court must apply the standard announced by the Supreme Court in *Twombly*, 550 U.S. 544 (2007), described as follows:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

11

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Iqbal*, 556 U.S. at 678-79 (alterations, citations, and internal quotation marks omitted).

## IV.    Discussion

### A.     Fraud

Defendants argue that Plaintiffs are trying to turn an unenforceable promise, one that could not support a claim for either breach of contract or promissory estoppel, into a claim for fraud, and thus have failed to state a claim. [Doc. 8-1 at 7-9]. Defendants argue that Plaintiffs' fraud claim is centered around an alleged unenforceable oral promise to give a loan modification if they missed 3 monthly payments; however, Defendants argue that such a promise, to be enforceable, would have to be in writing in order to not violate the Statute of Frauds. [*Id.* at 7-9]. Defendants do not argue that Plaintiffs' fraud claim fails for lack of a misrepresentation. [*See id.*, *passim*].

Plaintiffs argue that their fraud claim is not premised on a breach of an oral promise of a loan modification, but rather on BANA's knowingly false representations

12

upon which Plaintiffs relied to their detriment. [Doc. 11 at 9]. Plaintiffs argue that BANA led Plaintiffs to fall behind on their payments and intentionally deceived Plaintiffs by leading them to believe that they were being reviewed for a loan modification. [*Id*. at 9-10]. Plaintiffs argue that BANA had no intention to give them a modification because it repeatedly requested documents which BANA either intentionally disregarded or maliciously destroyed. [*Id*.]. Thus, Plaintiffs argue, Defendants' Statute of Frauds argument is inapplicable and Plaintiffs have sufficiently stated a claim for fraud. [*Id*. at 4-10].

Defendants did not file a reply brief. [*See* Dkt.].

To make out a case for fraud in Georgia, a plaintiff must plead facts showing that (1) the defendant made false representations; (2) at the time, the defendant knew the representations were false; (3) the defendant made the representations with the intention and purpose of deceiving the plaintiff; (4) the plaintiff relied on the representations; and, (5) the plaintiff sustained the alleged loss and damage as the proximate result of the representations having been made. *Estate of Shannon v. Ahmed*, 304 Ga. App. 380, 383, 696 S.E.2d 408, 410 (2010); *see also Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 82, 663 S.E.2d 779, 783 (2008) (further specifying that the plaintiff must plead facts indicating that he acted reasonably in relying on the defendant's

13

representations).  A claim of fraud must generally be premised on false representations related to existing facts or past acts, not to future acts or promises.  *Brown v. SunTrust Bank*, No. 2:14-CV-0014-RWS-JSA, 2014 WL 4925719, at *9 (N.D. Ga. Sept. 30, 2014); *see also Greenwald v. Odom*, 314 Ga. App. 46, 723 S.E.2d 305, 313 (2012) (holding that a fraud claim cannot be based on " 'mere broken promises, unfulfilled predictions or erroneous conjecture as to future events.' ") (quoting *Infrasource v. Hahn Yalena Corp.*, 272 Ga. App. 703, 613 S.E.2d 144, 148 (2005)).  For these reasons, actionable fraud usually cannot "result from a mere failure to perform promises made.  Otherwise any breach of a contract would amount to fraud."  *Gibson v. Tech. Servs., Inc. v. JPay, Inc.*, 327 Ga. App. 82, 84, 755 S.E.2d 377, 379 (2014)  (quoting *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 558, 644 S.E.2d 440, 447 (2007) (internal quotation mark omitted)). But this general rule is subject to a well-recognized exception: a cause of action for fraud may lie where, at the time of the misrepresentation, the promisor either knows that the future event will not occur or has no intention of performing.  *Id.*

The Court concludes that Defendants' challenge to Plaintiffs' fraud allegations misinterprets what Plaintiffs actually are alleging.  It is true that the Statute of Frauds would bar Plaintiffs from asserting that Defendants deprived them of a loan

14

modification.   O.C.G.A. § 13-5-30; *Jean v. Am. Home Mortgage Servicing, Inc.*, No. 1:11-CV-1101-WSD, 2012 WL 1110090, at *4 n.4 (N.D. Ga. Mar. 30, 2012); *Ogburn v. Chase Home Fin. LLC*, No. 1:11-CV-1856-TWT, 2011 WL 5599150, at *2 (N.D. Ga. Nov. 16, 2011) ("Mortgage agreements and modifications are also subject to the statute of frauds."); *see also Allen v. Tucker Fed. Bank*, 236 Ga. App. 245, 247, 510 S.E.2d 546, 547 (1998); *Jarman v. Westbrook*, 134 Ga. 19, 19, 67 S.E. 403, 404 (1910) ("The statute of frauds requires that a contract for the sale of an interest in lands shall be in writing, and any modification of a written contract required by law to be in writing must also be in writing in order to be valid.")).   But that is not what a fair reading of Plaintiffs' fraud claim reveals they are alleging.

Having relied solely on the Statute of Frauds to defeat Plaintiffs' fraud claim, Defendants' motion to dismiss should be denied.   Plaintiffs contend that BANA had no intention of providing Plaintiffs with a loan modification or to review their application in good faith and that they relied to their detriment on representations made by BANA.   While perhaps there were other arguments Defendants could have made to challenge the sufficiency of these allegations, Defendants did not make those alternative arguments.   The Court is not required to make arguments on behalf of a party to litigation, especially a represented party, and it is not inclined to do so in this case.   *See*

15

*Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1265 n.3 (10th Cir. 2008); *see also Aikens v. Ingram*, 652 F.3d 496, 506 (4th Cir. 2011) (" '[I]t is not the Court's place to try to make arguments for represented parties.' " (quoting *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 861 (N.D. Ill. 2008))).

Accordingly, the undersigned **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's fraud claim (Count 1) be **DENIED**.

### B.      Breach of Contract

Defendants argue that Plaintiffs' breach of contract claim for failure to provide notice prior to acceleration pursuant to the security deed fails because Plaintiffs' prior servicer sent two separate Notices of Intent to Accelerate on January 16, 2008 and April 10, 2008, attached to their motion, which complied with the Security Deed. [Doc. 8-1 at 10].  Defendants further assert that there can be no breach of contract claim for damages when there is no consummated foreclosure sale.  [*Id*. at 11 (citing *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1132-33 (11th Cir. 2014))].

Plaintiffs argue that notices produced by Defendants have no bearing on their claim and cannot be considered by this Court because the notices were sent by a completely different servicer, the foreclosure sale notice at issue was from December 2012 for a sale date of February 2013 and thus they were entitled to new

16

notices, and the notices from five years prior could not have contained the current amount to cure the default. [Doc. 11 at 10-12]. Plaintiff further argues that *Bates* is distinguishable because, in that case, the security deed contained a reinstatement provision that allowed the borrower to reinstate the loan even after foreclosure by paying the arrears and foreclosure costs and here, there is no such reinstatement clause in Plaintiff's Security Deed. [*Id*. at 12-13].

The Court concludes that it cannot consider the notices attached to Defendants' motion. A court may consider documents attached to a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings without converting the motion into a Rule 56 motion for summary judgment where the document is "(1) central to the plaintiff's claim and (2) undisputed," *i.e.*, the authenticity of the document is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). As a result, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [courts] may consider such a document provided it meets the centrality requirement." *Id*.

Here, the notices provided by Defendant are from 2008. Viewing the facts in the Complaint as true, Plaintiffs were current on their mortgage and did not default on the

17

loan until March 2010, [Doc. 1-1 at ¶ 12], which means, even if there is no dispute over the authenticity of the notices, Plaintiffs cured any allege default arising from the 2008 acceleration notices.  Accordingly, pursuant to the Security Deed, Plaintiffs were entitled to a new set of notices arising from any subsequent default prior to acceleration.  Thus, the acceleration notices at issue are not central to Plaintiffs' claim.

The Court also rejects Defendants' argument that Plaintiffs may not maintain a claim for damages for breach of contract where there is no consummated foreclosure sale.  *Bates* is the only case cited in support of this argument.  However, *Bates* expressly recognizes that an unauthorized acceleration of the note absent a foreclosure sale "might give rise to damages in some circumstances."  768 F.3d at 133.  As noted by Plaintiffs, the *Bates* court found a lack of causation and damages because there was a generous reinstatement provision contained in the security deed that allowed the plaintiff to reinstate the loan by simply paying all of the outstanding monthly payments and fees.  *Id.*  Here, Defendants do not point to a similar reinstatement provision in Plaintiffs' Security Deed and the foreclosure notice attached to the Complaint allowed for reinstatement only at the option of the Servicer and on the Servicer's terms. [Doc. 1-6 at 12].

18

Therefore, the Court concludes that Plaintiffs have sufficiently stated a claim for breach of contract and the undersigned **RECOMMENDS** that Defendants' motion to dismiss Plaintiffs' breach of contract claim (Count 2) be **DENIED**.

### C.    Wrongful Foreclosure

Defendants argue that Plaintiffs cannot maintain an action for wrongful foreclosure prior to an actual foreclosure sale. [Doc. 8-1 at 11-12 (citing *Jenkins v. McCalla Raymer*, LLC, 492 Fed. Appx. 968, 972 (11th Cir. Oct. 25, 2012); *Watkins v. Beneficial, HSBC Mortgage*, No. 1:10-CV-1999-TWT, 2010 WL 4318898, at *17-18 (N.D. Ga. Sept. 2, 2010); *Brown v. Freedman*, 222 Ga. App. 213, 215, 474 S.E.2d 73, 76 (1996))]. Defendants further argue that even if Plaintiffs could maintain a claim for wrongful foreclosure, Plaintiffs cannot establish that they have been damaged by any alleged wrongful conduct by Defendants because Plaintiffs' failure to pay is the sole cause of the foreclosure. [*Id.* at 12-13].

Plaintiffs assert in both their brief and complaint that they may maintain an action for wrongful foreclosure because *Sears Mortg. Corp. v. Leeds Bldg. Prods., Inc.*, 219 Ga. App. 349, 351, 464 S.E.2d 907, 909 (1996), held that a wrongful foreclosure claim is ripe upon the advertising of the property for sale and the actual sale of the property is not required. [Doc. 1-2 at ¶ 69 n. 1; Doc. 11 at 13-14]. Plaintiffs further

AO 72A
(Rev.8/8
2)

argue that *Sears* was overturned on other grounds, but otherwise remains good law. [*Id*.].  Plaintiffs also argue that Plaintiffs' default does not invalidate their claim and Plaintiffs' failure to pay was not the sole cause of the foreclosure as BANA instructed Plaintiffs to stop making mortgage payments. [Doc. 11 at 15-16].  Plaintiffs argue that Defendants' cited cases on this point are distinguishable because those cases did not allege that the lenders directed the borrowers to default and there was no evidence presented that the lenders maliciously schemed to lead the homeowners into foreclosure.  [*Id*. at 16].

The Court agrees with Defendants and concludes that Plaintiffs' claim for wrongful foreclosure is not ripe as there has not been a foreclosure sale.  Plaintiff argues that, on appeal from *Sears*, the Georgia Supreme Court did not address the timing of when a wrongful foreclosure claim could be brought.  [Doc. 1-2 at ¶ 69 n. 1; Doc. 11 at 13-14].  Although the Georgia Supreme Court did not specifically address the timing of a wrongful foreclosure claim, as noted by *Jenkins*, on remand, the Georgia Court of Appeals nonetheless vacated the portion of the decision concerning the timing of wrongful foreclosure claims.  492 Fed. Appx. at 972 n.3 (citing *Sears Mortg. Corp. v. Leeds Bldg. Prods., Inc.*, 225 Ga. App. 806, 488 S.E.2d 131, 131 (1997) ("Accordingly, our decision is vacated with respect to Divisions 1 and 2, the judgment

of the Supreme Court is made the judgment of this Court with respect to Divisions 1 and 2, and the trial court's judgment is affirmed.")).  "As a result, we find this aspect of the cited case has no precedential value and does not represent the current state of Georgia law."  *Id.*

Moreover, Plaintiffs made this very same argument in their previous case, which was rejected for the same reason.  *See Sheely*, 36 F. Supp. 3d at 1376.  Plaintiffs have not cited to any authority post-*Sears* that supports their argument.  Accordingly, the undersigned **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's wrongful foreclosure claim (Count 3) be **GRANTED**.

### D.   Intentional Infliction of Emotional Distress

Defendants argue that Plaintiffs' IIED claim should be dismissed because the claim is nothing more than a recitation of the elements of the claim, fails to allege any facts suggesting that Defendants acted intentionally and outrageously, and fails to make any showing of "severe" distress. [Doc. 8-1 at 14-16].  Moreover, Defendants argue, Plaintiffs' alleged fear of losing their home is properly traced to their failure to make mortgage payments, not by any conduct of Defendants.  [*Id*. at 16].

Plaintiffs argue that their IIED claim is well supported and far more than a recitation of the elements in that Plaintiffs have alleged that BANA's deceptive actions

21

were intentional for the purpose of foreclosing on Plaintiffs' home, the actions were extreme and outrageous as they employ systematic deceptive practices to fraudulently take the homes of millions of homeowners, and BANA's actions caused severe emotional distress to Plaintiffs in that Mr. Sheely has severe stress and high blood pressure that threatens his job and Mrs. Sheely's blood pressure is so high that the strongest medication cannot control it. [Doc. 11 at 17-19]. Plaintiffs argue that they also live in fear everyday of losing their home and, while Defendants argue that this can be traced to their failure to pay, Defendants ignore that BANA maliciously and wrongly told Plaintiffs to default on the loan. [*Id*. at 19-20]. Plaintiffs further argue that Defendants' cited cases are distinguishable because in those cases, there was no evidence that the servicer's conduct was maliciously intentional and there was only a recital of the elements supported by mere conclusory statements. [*Id*. at 21-22]. Here, Plaintiffs argue that paragraphs 33-48 and 78-80 of the complaint sufficiently detail BANA's extreme and outrageous behavior and this case is far more than alleged inaccuracies in a foreclosure advertisement or simple losing of documents. [*Id*.].

> To state a claim for IIED under Georgia law,
>
> a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress

22

was severe.  The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

*Steed v. Fed. Nat'l Mortg. Corp.*, 301 Ga. App. 801, 810, 689 S.E.2d 843, 851-52 (2009) (quoting *Frank v. Fleet   Fin. Inc.*, 238 Ga. App. 316, 317-18, 518 S.E.2d 717,719-20 (1999)); *see also Roddy v. City of Villa Rica, Ga.*, 536 Fed. Appx. 995, 1002 (11th Cir. Oct. 4, 2013) (recognizing that whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law) (quoting *Frank*, 238 Ga. App. at 318, 518 S.E.2d at 720).  " '[T]he conduct must inflict emotional distress so severe that no reasonable person could be expected to endure it.' " *Onbrand Media v. Codex Consulting, Inc.*, 301 Ga. App. 141, 152, 687 S.E.2d 168, 177 (2009) (quoting *Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 584, 657 S.E.2d 644, 648 (2008)).  "Such does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living.  Plaintiffs are expected to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind." *Jarrard v. United Parcel Serv., Inc.*, 242 Ga. App. 58, 59, 529 S.E.2d 144, 147 (2000).  "Claimants bear a heavy burden in establishing the type of extreme and outrageous conduct necessary to sustain a claim

23

for intentional infliction of emotional distress." *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 640, 484 S.E.2d 659, 664 (1997).

The Court concludes that, although the issue is close, Plaintiffs have met their burden to survive a motion to dismiss the IIED claim.  Despite Defendants' arguments to the contrary, Plaintiffs do not provide a mere recitation of the elements as the complaint provides detailed facts for each element.   Plaintiffs have alleged that BANA's deceptive and fraudulent conduct was intentional, [*see e.g.* Docs. 1-1, 1-2 at ¶¶ 58, 78]; if true as alleged, the pattern of deceptive and dissembling practices to lure homeowners such as Plaintiffs into believing that they were going to be reasonably considered for a loan modification, who were then victimized by disingenuous stalling and obstructive tactics that retarded the orderly loan modification process (which then led to attempts to foreclose), could constitute extreme and outrageous behavior, [*see e.g. id.* at ¶¶ 41-44, 79][3]; the conduct caused Plaintiffs

---

[3]         Damages for IIED may be obtained in the case of a wrongful foreclosure. *See DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 449-50, 662 S.E.2d 141, 147-48 (2008).  At the motion to dismiss stage, the Court sees no reason why an IIED claim could not be sought for conduct that otherwise satisfies the elements of an IIED claim under Georgia law that leads to a foreclosure that would not have occurred but for the wrongful conduct.  As the Georgia Court of Appeals has recognized, in determining " '[w]hether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress,' "

24

_____

> it has not been enough that the defendant has acted with an intent which
> is tortious or even criminal, or that he has intended to inflict emotional
> distress, or even that his conduct has been characterized by malice, or a
> degree of aggravation that would entitle the plaintiff to punitive damages
> for another tort.  Liability has been found only where the conduct has been
> so outrageous in character, and so extreme in degree, as to go beyond all
> possible bounds of decency, and to be regarded as atrocious, and utterly
> intolerable in a civilized community.

*Jenkins v. Wachovia Bank, Nat. Ass'n*, 309 Ga. App. 562, 568, 711 S.E.2d 80, 85
(2011) (footnotes and citations omitted).  Assuming that Plaintiffs can prove that the
conduct alleged in their complaint at paragraphs 41-43 occurred in their case, such
conduct could be considered to have risen to the requisite level of outrageousness and
egregiousness to make out an IIED claim.

The Court's research has not disclosed an analogous set of facts in an IIED case
under Georgia law.  On the other hand, the Eleventh Circuit in *Echeverria v. BAC
Home Loans Servicing, LP*, 523 Fed. Appx. 675 (11th Cir. July 18, 2013), applying
Florida law, concluded that

> Insofar as the plaintiffs' alleged intentional infliction of emotional
> distress, the district court correctly held that the defendants' alleged
> conduct (e.g., not providing the plaintiffs with correct information
> concerning their mortgage loan, refusing to modify that loan, losing
> papers and documents, and threatening foreclosure) was not "so
> outrageous in character, and so extreme in degree, as to go beyond all
> possible bounds of decency."

*Id.* at 677 (citations omitted).  *Echeverria* is not determinative in this case.  First, the
court there applied Florida, not Georgia, law.  Second, the *Echeverria* court was
reviewing the grant of summary judgment, not a motion to dismiss.  And third, unlike
*Echeverria*, Plaintiffs in the instant action allege not merely that BANA lost papers and
documents but that BANA's employees fraudulently and deceptively set out to string

25

emotional distress because they constantly attempted to satisfy BANA's repeated demands for paperwork regarding the modifications and they live in rational fear that they will lose their home, [*id.* at ¶¶ 37-40], Mr. Sheely's blood pressure became so high that he risks losing his job, and Mrs. Sheely's blood pressure is so high that medication cannot control it, [*see, e.g., id.* at ¶¶ 45-48, 80]. Whether or not, as Defendants contend, Plaintiffs' alleged emotional distress is of their own making, is generally for the jury to decide once Plaintiffs have crossed the "outrageousness" pleading threshold (and then survive summary judgment). Based on the facts alleged, Plaintiffs have sufficiently pleaded their IIED claim.

Accordingly, the undersigned **RECOMMENDS** that Defendants' motion to dismiss Plaintiffs' IIED claim (Count 4) be **DENIED** as to the alleged actions relating to the loan modification process. On the other hand, the Court concludes that Defendants' supposed failure to provide sufficient notice prior to advertising for foreclosure to not constitute the type of outrageous conduct necessary to support an

---

Plaintiffs along during the purported loan modification process, while purposely not considering reasonable applications submitted in good faith in order to ultimately foreclose upon their home. These allegations are to an extent and degree more severe than the conduct found not to satisfy Florida's IIED cause of action in *Echeverria*.

26

IIED claim, and therefore the Court **RECOMMENDS** that the motion to dismiss the IIED claim as to that conduct be **GRANTED**.

### E.     Injunctive Relief

Plaintiffs appear to have abandoned their claim for injunctive relief based on the District Judge's prior order denying Plaintiff's motion for preliminary injunction as moot.  [Doc. 11 at 23; *see* Doc. 5].  Therefore, the undersigned **RECOMMENDS** that Defendants' motion to dismiss Plaintiffs' claim for injunctive relief be **GRANTED**.

### F.     Punitive Damages

Under Georgia law, "punitive damages may be awarded only such tort actions in which it is proven by clear and convincing evidence that defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression or an entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Defendants argue that Plaintiffs have not made any specific allegations that demonstrates willful misconduct, malice, fraud, wantonness, oppression or an entire want of care.  [Doc. 8-1 at 18-19].  As the Court concludes that, at present, Plaintiffs have stated claims for fraud and IIED, the Court disagrees that the punitive damages claim is subject to dismissal.  Therefore, the undersigned **RECOMMENDS** that

27

Defendants' motion to dismiss Plaintiffs' claim for punitive damages (Count 5) be

**DENIED**.

> **G.     Attorney's Fees**

Georgia law allows for a plaintiff to recover attorney's fees and costs "where the

plaintiff has specially pleaded and has made prayer therefor and where the defendant

has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff

unnecessary trouble and expense."   O.C.G.A. § 13-6-11.   Defendants argue that

Plaintiffs fail to allege any facts in support of their claim for attorney's fees under

O.C.G.A. § 13-6-11.  [Doc. 8-1 at 20].  The Court again disagrees, because if Plaintiffs

prevail on their fraud and IIED claims, they may be entitled to attorney's fees. *Stephen*

*A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 682, 754 S.E.2d 640, 648 (2014) (holding

that  where a plaintiff has set forth a valid claim for an intentional tort, such as fraud,

he may be entitled to recover the expenses of litigation, including attorney fees)

(citation omitted).   Therefore, the undersigned **RECOMMENDS** that Defendants'

motion to dismiss Plaintiffs' prayer for attorney's fees be **DENIED**.

**V.     Conclusion**

For the reasons set forth above, the undersigned **RECOMMENDS** that

Defendant's motion to dismiss, [Doc. 8], be **GRANTED IN PART and DENIED IN**

**PART**.   Specifically,   the   undersigned   **RECOMMENDS**   that   the   motion   be **GRANTED** as to Plaintiff's wrongful foreclosure claim (Count 3) and intentional infliction of emotional distress (Count 4) claim as it relates to Plaintiffs' contention that Defendants gave them insufficient notice of the intent to foreclose, as well as the motion for injunctive relief; and **DENIED** as to Plaintiffs' claims for fraud (Count 1), breach of contract (Count 2), intentional infliction of emotional distress relating to the loan modification process (Count 4), and punitive damages (Count 5), and prayer for attorney's fees.

      **IT IS SO RECOMMENDED**, this the 29th day of December, 2015.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

29